THOMAS ELSNER and EMMA M. ELSNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Elsner v. Commissioner
Docket No. 4266-71
United States Tax Court
T.C. Memo 1973-165; 1973 Tax Ct. Memo LEXIS 120; 32 T.C.M. (CCH) 800; T.C.M. (RIA) 73165; July 30, 1973, Filed Thomas Elsner, pro se. Karin T. Skeen, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $1,107.33 deficiency in petitioners' 1967 Federal income tax. The sole issue for decision is whether petitioners are entitled to deduct as an educational expense all or any part of the cost of their 1967 European trip. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Thomas Elsner ("Thomas") and Emma M. Elsner ("Emma"), resided in San Jose, California when they filed their petition herein. During 1967 they were married 2 and filed their joint 1967 Federal income tax return with the Western Service Center at Ogden, Utah. Petitioners subsequently *121 were divorced. During 1967 Thomas was employed as an associate professor of art at San Jose State College, San Jose, California, where he has taught since 1958. In 1967 Thomas taught "Commercial Art" and "Special Problems in Art" which were described in the 1967 San Jose State College catalog as follows: Commercial Art. Emphasizes creative design and illustration used in educational, institutional, promotional and advertising art. Typography and the preparation of art work for reproduction are included in the course. Special Problems in Art. Individual study in a selected art area. Restricted to qualified seniors and graduate students. In addition to his teaching duties, Thomas was chairman and later coordinator of the Graphic Design program of the college's art department. During this same period, Emma was a lecturer at the California College of Arts and Crafts in Oakland, California. She taught three courses entitled "Design," "Graphic Design" and "Illustration." Petitioners' field of expertise is generally referred to as "graphic design" or "graphic art." Thomas defined graphic design as "[art] work that is designed for, or useful for, reproduction in publishing. *122 The main accent of this field in the United States * * * is advertising * * *." 3 In 1967 Thomas and Emma decided to take a trip to Europe. Thomas was granted six months' leave of absence with full pay by San Jose State College commencing February 1, 1967, and, at the same time, Emma was granted a leave of absence without pay by the California College of Arts and Crafts. From February 4, 1967 through August 2, 1967, petitioners traveled from San Jose to Europe and back, stopping at the following places: Colorado Springs, Colorado
Feb. 4 - 8
London, England
Feb. 9 - 22
Barcelona, Spain
Feb. 23 - March 2
Valencia, Spain
March 3 - 5
Barcelona, Spain
March 6 - 19
Castelldefels, Spain
March 20 - 28
Madrid, Spain
March 29 - April 11
Milan, Italy
April 12 - 13
Brindisi, Italy
April 14
Athens, Greece
April 15 - 22
Rhodes, Greece
April 23 - May 6
Corfu, Greece
May 6 - 11
Florence, Italy
May 12 - 17
Paris, France
May 18 - 21
London, England
May 22 - 24
Exeter, England
May 25 - 28
London, England
May 29 - June 2 4 Roehampton, England
June 3 - July 30
New York City, New York
July 31 - August 1
San Jose, California
August 2
*123 Petitioners did not make any notes or maintain a diary of their activities during their trip. They did, however, prepare an itinerary of the trip in 1968 at the request of the Internal Revenue Service. The itinerary lists the five goals of the trip as: 1. Typographic Study 2. Publication Design and Economics Study 3. Recruitment for expanding Graphic Design area, Art Department, San Jose State College. 4. Study graduate level schools of Graphic Design for development of graduate level program in Graphics Design. 5. Purchase Graphic Art books and publications for the San Jose State College Library. Notwithstanding these goals, petitioners had no prearranged plan of exploration or study in Europe. They did not contact any people or any schools before going to Europe; they did not compose a list of schools and educational places to visit; and Thomas did not compile a written list of the books contained in the San Jose State College Library in order to know what volumes should be acquired. Moreover, Thomas did not have the authority to interview people in Europe on behalf of San Jose State College.While in Europe, petitioners visited several schools, museums and *124 bookstores. 5 However, these visits were random and superficial. The only materials that petitioners brought back from Europe which were used as teaching aids were six posters used by Emma in her classes. On their 1967 tax return, petitioners claimed a $5,225.29 deduction for employee business expenses arising from the European trip as follows: Travel
$1,918.50
Lodging
1,838.56
Food
1,065.00
Tips
224.06
Interpreter
145.00
Museum Fees
18.75
Bank Service
15.42
Total
[1] $5,225.29
Respondent disallowed the deduction, stating that petitioners had not established that such expenses meet the criteria for deductibility set forth in section 1.162-5, Income Tax Regs., either as adopted April 3, 1958 or as amended May 1, 1967. 6 OPINION Petitioners contend that the 1967 European trip was undertaken by them primarily *125 to maintain and improve their job skills and was directly related to their trade or business. Respondent asserts that the trip was a personal expense and therefore not deductible. We agree with respondent. For six months in 1967 petitioners journeyed throughout Europe visiting England, Spain, Italy, Greece and France. Petitioners' travel expenses incurred on their 1967 trip are deductions under section 162(a) [2] only if they constitute ordinary and necessary business expenses. Section 1.162-5, Income Tax Regs., governing the deductibility of a taxpayer's educational expenses, which was in force during 1967, was promulgated in 1958 by T.D. 6291. In 1967 revised regulations section 1.162-5 was promulgated by T.D. 6918. These new regulations are effective for taxable years beginning on or after January 1, 1968, but for prior years taxpayers may rely on either the 1958 or the 1967 regulations. Rev. Rul. 68-191, 1968-1 C.B. 67. Petitioners have chosen to rely on the 1967 regulations. 7 Under the 1967 regulations, [3] deductibility *126 of petitioners' travel expenses turns on the factual question whether a major portion of the activities in which they engaged during their trip was of such a nature as directly to maintain or improve skills required by each of them in their employment. George W. Gino, 60 T.C. No. 37, (1973); Stanley Marlin, 54 T.C. 560 (1970); section 1.162-5, supra (1967). *127 8 The primary skill required by petitioners in their employment is the ability to teach graphic art. Thomas defined graphic art as "[art] work that is designed for, or useful for, reproduction in publishing. The main accent of this field in the United States * * * is advertising * * *." Graphic art is thus commercial and practical in nature. Emma testified that the usual method of instruction in this area is to lecture for part of the class time and to work with the students in studio classes for the remaining time. For petitioners to be entitled to deduct the expenses of their 1967 trip as an educational expense, they have the burden of proving that such travel maintained or improved their skill in teaching graphic art. Rule 32, Tax Court Rules of Practice.
Thomas' "itinerary," prepared after the trip was completed, relates that petitioners visited professional friends in Colorado Springs and art museums, schools and bookstores in Europe. Thomas testified that he could have corresponded 9 with his friends in Colorado Springs rather than visited them, but that "the written word is very shaky with" him. The European art museums which they visited were of the *128 standard tourist category. Petitioners attended no in-depth professional studies while abroad. Besides the museums, petitioners went on a guided tour of Rhodes and spent some time at the Parthenon in Greece and the Ufizzi and Pitti Palace in Italy. In addition, they vacationed throughout rural Europe. While traveling, petitioners also stopped at various European schools. Petitioners had not compiled a list of schools to visit prior to touring Europe. Instead, they visited the schools as they happened upon them. They visited the University of Exeter, the Royal College of Art, London Central College, Kingston College and the Slade Academy in England; La Escuela Massana, La Escuela La Belles Artes, La Escuela Belles Artes Nationales and the Institute of North American Studies in Spain; the American Academy in Italy; and L'Ecole des Beaux Arts in France. Thomas testified that they observed the schools, the teachers and the relationship between teachers and students. Moreover, petitioners stopped at various bookstores in Europe. Their investigation of these bookstores was of the most casual and superficial nature. Petitioners did not know which books might be needed by the *129 San Jose State College Library nor did they show what, if 10 anything, they learned from their brief perusals of the foreign volumes. We note for the record that Thomas' testimony during the trial was rambling, evasive, lacking in candor, and frequently in conflict with exhibits prepared by him. Pursuant to the evidence presented, we find that petitioners' activities on this trip were not materially different from those reasonably expected of any other tourists their age on a sight-seeing trip abroad. Dennehy v. Commissioner, 309 F.2d 149 (C.A. 6, 1962), affirming a Memorandum Opinion of this Court. Although impressed by Emma's brief but articulate testimony that the trip improved her ability to communicate visually, we are unable to find on this basis alone that the trip maintained or improved the skills required by the petitioners as teachers of graphic art. For the most part, petitioners' activities were personal in nature. Petitioners have not satisfied their burden of proving that a major portion of the activities in which they engaged during their trip directly maintained or improved the skills required by them as teachers of graphic arts. Accordingly, *130 we find for respondent. Decision will be entered under Rule 50. Footnotes
1. In the stipulation of facts the parties agreed that petitioners expended only $5,057.79 on the 1967 trip as follows: ↩
Air Fare
$1,069.60
Trains, boats, planes in Europe
681.40
Lodging
1,838.56
Meals
1,065.00
Tips
224.06
Interpreter
145.00
Museum Fees
18.75
Bank Service
15.42
Total
$5,057.79
2. All Code references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
3. Sec. 1.162-5 Expenses for education. (a) General rule. - Expenditures made by an individual for education * * * are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. * * * (d) Travel as a form of education. - Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position.↩